UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

RHONDA HARDNETT-MAJETTE,

                              Plaintiff,

    -against-                                                    1:16-CV-389 (LEK/CFH)

NATIONAL RAILROAD PASSENGER
CORPORATION d/b/a AMTRAK,

                              Defendant.

_____

**MEMORANDUM-DECISION AND ORDER**

**I.    INTRODUCTION**

Plaintiff Rhonda Hardnett-Majette commenced this action against defendant National Railroad Passenger Corporation ("Amtrak") for an alleged slip and fall at the Albany/Rensselaer Train Station. Dkt. No. 2 ("Complaint"). Presently before the Court is Defendant's motion for summary judgment. Dkt. No. 14 ("Motion"); see also Dkt. Nos. 14-11 ("Memorandum"), 14-10 ("Statement of Material Facts"), 19 ("Response"), 20 ("Reply"). For the reasons that follow, the Motion is granted in part, and denied in part.

**II.    BACKGROUND**

    **A.  Factual Background**

On December 23, 2014, Plaintiff arrived at the Albany/Rensselaer train station for a trip to Elyria, Ohio to visit her mother. Dkt. No. 14-5 ("Plaintiff Deposition") at 24:9–22. Plaintiff arrived at the train station at approximately 6:00 PM. Id. at 25:8–14. It had been drizzling all day and the light rain continued as Plaintiff arrived at the station. Id. at 26:19–27:18. As Plaintiff walked onto the platform, she observed that the floor was wet. Id. at 32:20–33:18, 39:8–13. That

day, the car in which Plaintiff was ticketed was not aligning with the station platform due to construction. Id. at 61:6–22. A conductor instructed her to enter a different car and travel through the train to enter the sleeper car. Id. at 40:11–14. According to Plaintiff, this construction resulted in a larger than normal gap between the train and the platform. Id. 61:5–62. Plaintiff's husband accompanied her to the entrance of the car and witnessed the fall. Id. at 40:15–41:17, 50:1–7. Also present were two Amtrak employees, one outside the entrance to the car and another just inside the train vestibule. Id. at 47:1–8. The employee inside the vestibule told Plaintiff to "[w]atch [her] step" as she boarded. Id. at 46:19–24. Plaintiff noticed the gap between the platform and train and that the entrance to the train was wet. Id. at 42:5–8, 52:6–10.

As Plaintiff's right foot made contact with the train, she slipped, and her entire right leg fell through the gap. Id. at 42:15–43:18. Plaintiff's left leg remained on the platform splayed behind her as her right leg hung between the train and platform. Id. at 42:15–23, 48:18–49:11. Plaintiff alleges that the gap was large enough to fit her entire body. Id. at 43:22–44:2. Plaintiff has a forty-five inch waistline, and she has estimated the gap to be 14.3 inches wide—the diameter of her body. Resp. at 4. Plaintiff's husband stated that he "thought she was going to fall through" the gap to the track below and estimated that the gap was "no more than a foot." Dkt. No. 14-7 ("Majette Deposition") at 26:3–7, 35:13–17. According to Defendant's expert witness, the gap at the Albany/Rensselaer Station is at least seven inches wide as required by New York Rail Road Law. Dkt. No. 14-9 ("Torisno Affidavit") ¶¶ 5–8. Defendant has not provided the actual or theoretical maximum gap size at the time of the accident or any other time. Id.; Reply at 9.

Plaintiff's husband and an Amtrak employee pulled Plaintiff out of the gap. Pl. Dep. at 42:15–23. She was then offered medical treatment, but declined. Id. at 53:20–54:10. As Plaintiff walked to her seat, she experienced burning pain in her right leg. Id. When she took her seat, Plaintiff rolled up her pant leg and found that her right leg had been scraped and bruised by the fall. Id. at 55:12–56:1. Plaintiff later assisted an Amtrak employee in filling out an accident report in which she stated that the causes of her fall were the presence of the gap and the wet condition of the train and platform. Dkt. No. 14-6 ("Accident Report") at 1–2.[1]

When Plaintiff arrived at her destination the following day, her right leg was severely bruised and she experienced pain in her left knee. Pl. Dep. at 68:12–22. Upon disembarking, Plaintiff went to the hospital and she was given a wrap for her left knee and told to ice and elevate her right leg. Id. at 69:3–13. Plaintiff sought medical treatment a month later from an orthopedist for pain in her left knee. Id. at 71:7–72:4. An MRI of her left leg showed torn ligaments and tendons, and was given a cortisone shot, which alleviated the pain. Id. Approximately eleven months later, Plaintiff began experiencing pain and mobility problems again in her left knee and sought care from multiple doctors. Id. at 73:7–74:5. It was at this point that she brought suit against Defendant. Id. at 80:5–20.

**B. Procedural History**

Plaintiff initiated this lawsuit in Schenectady County Supreme Court on February 17, 2016, and it was removed to the Northern District of New York on April 6, 2016. Dkt. No. 1

---

[1] The page numbers for the accident report refer to those generated by the Court's electronic filing system ("ECF").

("Notice of Removal"); Compl. at 2.[2] The Complaint asserts that Defendant negligently maintained the premises, causing Plaintiff to fall between the train and the platform. Id. ¶ 4. On February 17, 2017, Amtrak moved for summary judgment, arguing primarily that it cannot be liable for negligence because it complied with all legal standards for gap width between the platform and train. Mem. at 11–12.

### III. LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure instructs courts to grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Although "[f]actual disputes that are irrelevant or unnecessary" will not preclude summary judgment, "summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Taggart v. Time, Inc., 924 F.2d 43, 46 (2d Cir. 1991) ("Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted.").

The party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party claims will demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Similarly, a party is entitled to summary judgment when the nonmoving party carries the ultimate burden of proof and has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

---

[2] The page numbers for the Complaint refer to those generated by ECF.

In attempting to repel a motion for summary judgment after the moving party has met its initial burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). At the same time, a court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); Nora Beverages, Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 742 (2d Cir. 1998). Thus, a court's duty in reviewing a motion for summary judgment is "carefully limited" to finding genuine disputes of fact, "not to deciding them." Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).

## IV. DISCUSSION

### A. Plaintiff's Failure to File a Statement of Material Facts

At the outset, the Court must determine the consequence, if any, of Plaintiff's failure to file a statement of material facts as required by Local Rule 7.1(a)(3). Under this rule, "[t]he Court shall deem admitted any properly supported facts in the Statement of Material Facts that the opposing party does not specifically controvert." L.R. 7.1(a)(3). The Court could grant summary judgment based on Plaintiff's failure to comply with this rule. N.Y. State Teamsters Conf. Pension & Ret. Fund v. Express Servs., 426 F.3d 640, 649 (2d Cir. 2005). The Second Circuit has acknowledged that the rule promotes judicial economy by identifying the disputed facts and the record evidence supporting such facts. Hotz v. Rockefeller & Co., 258 F.3d 62, 74 (2d Cir. 2001).[3] But the Court has discretion to excuse a failure to comply with the local rules. Id. Here,

---

[3] The Court is troubled by the complete absence of citations to the record in Plaintiff's Response. It is not the job of a court to hunt for the evidence that supports a plaintiff's assertions. Johnson v. Colvin, No. 13-CV-6319, 2014 WL 1394365, at *6 (W.D.N.Y. Apr. 9, 2014).

5

Plaintiff's oversight appears to be in good faith as evidenced by the letter she filed with the Court clarifying the disputed facts in this case. Dkt. No. 21 ("Plaintiff Letter"). For this reason, the Court will not deem admitted the facts set out in Defendant's Statement of Material Facts.

   **B. Wetness Negligence Claim**

Plaintiff's Complaint contains two theories of negligence. Plaintiff primarily argues that Defendant was negligent in allowing the train's entranceway to be wet. Compl. ¶ 4. Plaintiff also argues that Defendant negligently permitted Plaintiff to board across an unreasonably large gap. Id. Defendant moved for summary judgment on the ground that both theories fail. Mem. Yet Plaintiff's Response does not address Defendant's argument regarding wetness at all. Resp. When a nonmoving party fails to address an argument for summary judgment offered by the moving party, the Court may deem the issue abandoned. Bellegar De Dussuau v. Blockbuster, Inc., No. 03-CV-6614, 2006 WL 465374, at *7 (S.D.N.Y. Feb. 28, 2006); Arias v. Nasdaq/Amex Mkt. Grp., No. 00-CV-9827, 2003 WL 354978, at *13 (S.D.N.Y. Feb. 18, 2003). Thus, any negligence claim premised on the wet condition of the train and platform has been abandoned.[4] Defendant's Motion is granted with respect to the wetness negligence claim.

---

[4] Even if Plaintiff had not abandoned this claim, it would fail on the merits. There is no evidence that Defendant created the condition or had actual knowledge of the condition. Nussbaum v. Metro. N. R.R., 603 F. App'x. 10, 11–12 (2d Cir. 2015). Further, there is nothing in the record to suggest that the wetness of the floor was visible and apparent for a sufficient length of time before the accident to allow Defendant to discover and remedy the condition. Lewis v. Metro. Transp. Auth., 472 N.Y.S.2d 368, 371 (App. Div. 1984), aff'd, 474 N.E.2d 612 (N.Y. 1984). Under such circumstances, New York tort law does not recognize a common carrier's liability for a slip and fall due to a wet surface on a rainy day. Hussein v. N.Y.C. Transit Auth., 699 N.Y.S.2d 27, 28–29 (App. Div. 1999).

### C. Admissibility of Plaintiff's Expert Witness Testimony

Plaintiff relies in part on an affidavit from an undisclosed expert witness to prove that the gap between the platform and the train evidences Defendant's negligence. Dkt. No. 19-2 ("Levine Affidavit"). Under Rule 26(a)(2)(d) of the Federal Rules of Civil Procedure, a party must disclose an expert witness "at the times and in the sequence that the court orders." Further, under Rule 37(c)(1), "[a] party is not allowed to use [an undisclosed expert] witness to supply evidence on a motion . . . unless the failure [to disclose] was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). This rule seeks to deter the unfair practice of sandbagging the opposing party. Globalrock Networks, Inc. v. MCI Commc'ns Servs. Inc., 943 F. Supp. 2d 320, 329 (N.D.N.Y. 2013). "It [is] an exceedingly simple, perfunctory task to give notice of witnesses as required by Rule 26(a)[] but one which [is] important to permit defendants to meet [the expert's] testimony." Kullman v. New York, No. 07-CV-0716, 2009 WL 1562840, at *8 (N.D.N.Y. May 20, 2009). The pretrial scheduling order in this case required that Plaintiff disclose her expert witness ninety days prior to the discovery deadline on February 1, 2017. Dkt. No. 7 ("Pretrial Scheduling Order") at 1–2. Instead, Plaintiff disclosed her expert witness six months late on April 5, 2017, when she filed her Response. Resp at 6.

To determine whether an expert witness's testimony should be excluded for failure to timely disclose, a court should consider the following factors: "(1) the party's explanation for the failure to comply with the discovery order; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." Softel, Inc. v. Dragon Med. & Sci. Commc'ns, 118 F.3d 955, 961 (2d Cir. 1997). Plaintiff has not justified the late disclosure and

7

this failure is clearly prejudicial to Defendant, which has had no opportunity to depose Plaintiff's expert. But Plaintiff's expert testifies that the gap in question is larger than Defendant suggests. Levine Aff. ¶ 10. This may prove to be important testimony at trial. Further, a continuance to reopen discovery is appropriate when doing so may cure any prejudice resulting from the failure to timely disclose the expert witness's opinion. See, e.g., Chart v. Town of Parma, No. 10-CV-6179, 2014 WL 4923166, at *27 (W.D.N.Y. Sept. 30, 2014) ("[M[uch of the prejudice to the Town may be cured through reopening expert discovery."); Brenton v. Consol. Rail Corp., No. 00-CV-742, 2006 WL 1888598, at *4 (W.D.N.Y. July 7, 2006) (ordering additional discovery related to untimely disclosed expert witness' opinions). Thus, the Court grants Defendant an opportunity to depose Plaintiff's expert, conduct any other discovery necessary to rebut the testimony of that expert, and supplement its own expert affidavit if necessary. Scheduling and other matters related to this additional expert discovery are referred to U.S. Magistrate Judge Christian F. Hummel.

### D. Gap Negligence Claim

Plaintiff's second theory of negligence is that Defendant maintained an unreasonably large gap between the train and platform. Compl. ¶ 4. "While a claim of negligence does not preclude the granting of summary judgment, courts are generally reluctant to grant summary judgment in negligence cases because the assessment of reasonableness is generally a question of fact 'in all but the most extreme situations.'" Palmieri v. Celebrity Cruise Lines, Inc., No. 98-CV-2037, 1999 WL 494119, at *3 (S.D.N.Y. July 13, 1999) (quoting Ortiz v. Rosner, 817 F. Supp. 348, 350–351 (S.D.N.Y. 1993)). Railroads have a duty "to provide proper and safe means of getting from the platform of the cars to the platform of the station." Boyce v. Manhattan Ry.

Co., 23 N.E. 304, 305 (N.Y. 1890). The gap between the train and the platform ensures that the train does "not scrape the platform of the station, and [the car] must be far enough away to allow for the oscillation and swaying of the train." Ryan v. Manhattan Ry. Co., 23 N.E. 1131, 1131 (N.Y. 1890). Therefore, the mere fact that a gap exists is "not of itself negligence, if necessary in the proper operation of the railroad." Iorio v. Murray, 10 N.Y.S.2d 492, 494 (App. Div. 1939). But a gap may evidence negligence if "passengers are not reasonably protected" from the dangers it creates. Id.

Defendant argues that "a rail carrier who is compliant with applicable standards is not liable for alleged negligence due to the space between the platform and the train, where plaintiff fails to demonstrate the carrier's breach of duty to 'us[e] proper care to provide proper and safe means of getting from the platform.'" Reply at 8 (quoting Boyce, 118 N.Y. at 318). This argument fails for multiple reasons.

Under Defendant's theory, a rail carrier is not liable for negligence if it complies with a minimum seven inch gap standard. Defendant asserts that under New York law, high passenger platforms, such as that found at the Albany/Rensselaer Station, must have *at least* a seven inch gap between the platform and the train. Torisno Aff. ¶¶ 5–8; N.Y. R.R Law § 51-a (2). Notably, the statute in question states that high passenger platforms "*may* be five feet seven inches from the center line of the track," creating a seven inch gap. N.Y. R.R. Law § 51-a (2) (emphasis added). There is no language indicating that this clearance distance is a requirement. But the Court need not interpret New York Railroad Law here. Even adopting Defendant's interpretation of the statute, summary judgment must be denied.

New York courts have firmly rejected the notion that rail carriers cannot be found negligent if the gap between the platform and the train is within the applicable standard. Tzilianos v. N.Y.C. Transit Auth., 936 N.Y.S.2d 159, 161 (App. Div. 2012); Sanchez v. City of New York, 926 N.Y.S.2d 52, 53 (App. Div. 2011). The cases that find rail carriers to be non-negligent are distinguishable because they involve compliance with a maximum gap while Defendant has cited only its purported compliance with a minimum gap. Boyce, 118 N.Y. at 318; Howell, 998 N.Y.S.2d at 127; Glover, 879 N.Y.S.2d at 41; Curtin v. Metro N. R.R., 2013 No. 112572/10 Lexis 3053, at *5–6 (N.Y. Sup. Ct. July 17, 2013). Under Defendant's theory, it would be equally immune to negligence claims if passengers were made to board across a seven inch gap or a seven foot gap. This is an absurd proposition. A gap of exactly seven inches could still establish negligence if passengers are not reasonably protected from the dangers it poses. Iorio, 10 N.Y.S.2d at 494.

Moreover, Defendant has not provided any evidence indicating the actual width of the gap. Torisno Aff. ¶¶ 5–8. Nor has it indicated that it complies with a maximum gap size set by law or internal policy. Reply. A visual estimate of a gap can be used to raise a genuine issue of material fact as to a rail carrier's negligence. Sanchez, 926 N.Y.S.2d at 53 (citing Pemberton v. N.Y.C. Transit Auth., 758 N.Y.S.2d 29, 31 (App. Div. 2003)). Plaintiff provided such a visual estimate when she testified that the gap was large enough to accommodate the size of her body. Pl. Dep. at 43:22–44:2. Further, her husband stated that he thought Plaintiff was going to fall through the gap to the track below. Majette Dep. at 35:13–17. Plaintiff is an admittedly large woman, and the diameter of her body suggests that the gap was approximately fourteen inches wide. Resp. at 4. A reasonable jury could find that a fourteen inch gap evidences negligence. See

Boyce, 23 N.E. at 305 (holding that a reasonable jury could find a fourteen inch gap to be evidence of negligence); Pemberton, 758 N.Y.S. 2d at 31 (denying summary judgment where the gap was estimated to be between six to eight inches); Iorio, 10 N.Y.S.2d at 493 (finding that an eleven inch gap was sufficient to be submit the case to a jury); Johnson v. N.Y.C. Transit Auth., 794 N.Y.S.2d 564, 566 (N.Y. App. Term 2005) (holding that a gap between eight to fourteen inches was enough for a reasonable jury to infer negligence). Further, the mere fact that the entire leg of such a large woman was able to fall through the gap would allow a rational jury to find that Defendant was negligent. Sanchez, 926 N.Y.S.2d at 53; Pl. Dep. at 42:15–43:18. Thus, the Court denies Defendant's Motion with respect to the gap negligence claim.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendant's motion for summary judgment (Dkt. No. 14) is **GRANTED in part** as to Plaintiff's negligence claim premised on the wet condition of the train and the platform, and **DENIED in part** as to Plaintiff's negligence claim premised on the width of the gap between the train and the platform; and it is further

**ORDERED**, that Defendant shall have a continuance to conduct additional expert discovery in order to address Plaintiff's expert witness's opinion, and that scheduling and other matters related to such additional discovery are referred to U.S. Magistrate Judge Christian F. Hummel; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:   June 30, 2017
         Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge